Good morning. When your case is called, if you represent the appellant, please let us know how much time you need for rebuttal, and you may call the first case. Case No. 13-4192, Yvonne Jones v. Department of Homeland Security, et al. For the general argument, that should be 15 minutes to decide. Mr. Holliday for the appellant. Good morning, Your Honors. May it please the Court, my name is Brian Holliday, and I am here today representing Mr. Liban Jama, the appellant in this matter. I would like to reserve three minutes for rebuttal, please. Mr. Jama respectfully asks this Court to reverse the District Court's decision to refuse jurisdiction over the termination of his refugee status by the United States Citizenship and Immigration Service for the following three reasons. First of all, the Administrative Procedure Act provides for judicial review of final agency action for which there is no other adequate remedy in court, and the USCIS's decision to terminate Mr. Jama's refugee status is unambiguously final. Secondly, there exists no forum other than the District Court where Mr. Jama may challenge the termination of his refugee status and the subsequent denial of his Adjustment of Status application. These decisions may neither be reviewed nor renewed in Immigration Court or in any other administrative forum. Third, the jurisdiction stripping provisions of 8 U.S.C. 1252 B.9 do not apply here. Your Honors, the issue before this Court is strictly jurisdictional. Mr. Jama was admitted in refugee status nearly 14 years ago, on May 16, 2000. As required by law, he subsequently applied for Adjustment of Status within one year of admission. Excuse me, Counsel. Is there anything pending either before an Immigration Judge or the Appeals Board? Yes, Your Honor. Mr. Jama has pending currently before the Immigration Court a defensive application for asylum. This is a form of defense from removal. Is he able to seek Adjustment of Status in that proceeding? He is not at this time. There is no underlying basis for Mr. Jama to seek Adjustment of Status. He has not been granted asylee status and his refugee status has been terminated. There is no underlying basis. I'm sorry. Please go ahead. Well, even when his, presumably if he loses in the Immigration Court, he will appeal his immigration status. And even though the Immigration Court cannot consider his refugee status, when he takes his appeal, if he does lose, if he takes his appeal to the Circuit Court, I don't know why the Circuit Court couldn't at that time review the decision of the USCIS regarding his refugee status so that it may be that the decision that's been made with respect to his refugee status, in that sense, might not be final and it could be subject to review by the Circuit Court. Why couldn't we decide this case on that basis? The operations of termination of refugee status and a subsequent application for asylum are completely different. The only reason he's applied for asylum is because it's a secondary parallel legal form for which he can try to seek relief from removal from the United States. However, in the event his asylum application is ultimately approved, he would subsequently have to wait a year, then apply for adjustment of status, and then wait five more years before he would be eligible to apply, for example, for naturalization. Currently, if his refugee status is reinstated, once he becomes a permanent resident of the United States through an adjustment of status application, he is deemed to be admitted as a lawful permanent resident of the United States as of his admission date as a refugee, May 16th of 2000. This would make him immediately eligible to apply for naturalization. Yeah, but we're not trying to necessarily make it possible for him to immediately apply for naturalization if that's not what he's entitled to. My question was something else, which is whether the decision regarding his refugee status couldn't be subsequently reviewed by the circuit court at the time that his immigration status is reviewed if he loses in the immigration court and appeals that. So I'm not trying to figure out a way to give him your client relief he's not entitled to at this moment. I'm just asking about whether the matter can be further reviewed by the Court of Appeals at some later time. Termination of refugee status cannot be reviewed by the circuit court. Why? Because there's been no hearing on it. In order for the USCIS to terminate refugee status, they have to go through a specific procedure. That procedure involves making a determination whether Mr. Jama was a refugee at the time of his admission. In other words, they can't. Well, wait a minute now. They've gone through the procedure that the agency is required to go through, so the circuit court might be able to review it on the basis that that's a final agency action. So I mean, you know, if the court looks at it a bit differently than the way you're presenting it, it might be capable of review. We respectfully submit that that's not the case. The agency simply terminated it. It sounds like you're arguing against your own client. You're trying to cut off your client's right to further review. He has no right to further review of a refugee termination. Well, I can't find any case that says that. I can't find any case that says the contrary either, but I can't find any case that says your client wouldn't be entitled to further review on that issue. The regulations under HCFR 207.9 state that there is no appeal under this chapter from the termination of refugee status by USCIS. Right, but there's no direct appeal from USCIS. We all agree on that. The issue of removal proceedings, if you lose there, then you can come here. Why is that wrong? Once he's in removal proceedings, all he's doing at that point is trying to defend himself from being removed from the United States. The immigration judge has no jurisdiction. Right, so let's say you lose, okay, and you get an order from the IJ. You can then go to the board, correct, on that? You can go to the Board of Immigration Appeals on the removal issue, not on the termination of refugee status. Okay, that's fine. Okay, but then you come here, and I guess what Judge Clay is asking, and I'm wondering too, is at that point why, as part, you know, of his petition, couldn't we look at the termination of refugee status that started this whole thing? And let me tell you, I don't think the answer is the reg you just read because that says there's no appeal under this chapter whatever, which is a chapter about DHS. It's not a chapter about DOJ, which is where you are now, and it's not a chapter that says we can't appeal. If the matter was, if Mr. John Moses seek any form of appeal at the BIA, it would be purely in the form of a denial of a subsequent defensive asylum case. If we attempted to raise the termination of refugee status at the BIA level. Right, so you're going to lose on that there, but why can't you come, when you come here, why can't you say I should not have been put in removal proceedings to begin with because my refugee status shouldn't have been terminated? There's no record on which the court of appeals could review it. Well, I mean, what's the record on which the district court's reviewing it? Are you creating one? We need to create a record. He needs to have his day in court. I mean, I don't know. It would seem like you could, whatever basis. I mean, are you saying that when they terminated the refugee status, they didn't have any documentary record whatsoever? That's exactly what we're saying. So he goes in for the interviews and then he just gets the letter in the mail, that's it? Well, the interview that they conducted where they were supposed to, under agency case law, determine whether he was a refugee on the day of his admission in his own right, that never happened. Wait a minute now. The agency determined that he wasn't entitled to refugee status, and they had some information that they utilized to arrive at that decision, and that's what would presumably, that's what would subsequently be reviewed by the court of appeals if the question ever came to us. The information that the agency used to terminate his refugee status was that he misrepresented his age, misrepresented who his mother was. Which he did, and he's admitted to doing that. However, the statute that governs refugee status, Your Honor, if I may, states that he was admitted to the United States in refugee status because the applications that were submitted on his behalf by his family showed him to be a minor child. The agency later found out that he was not a minor child at the time. However, 8 U.S.C. 1157 C.2 states that the spouse or child of any refugee shall, if not otherwise entitled to admission as a refugee in his own right, be granted the same status. But all that goes to the merits of whether the refugee status decision was properly made. So there is a record in the sense that there are affidavits, application forms, and other things, and there's also your client's admission that he misrepresented. So there is a record that's available to be reviewed and can be reviewed. Yes, there is, Your Honor. However, again, the point being that he was a refugee in his own right at the time. The agency was obligated to make that determination whether or not he was a refugee in his own right at the time, and they never did that. How was he a refugee if he, in fact, was not the son of his aunt? I know this isn't a merits appeal, but it seems really cut and dried that he wasn't a refugee. Well, a refugee by definition, Your Honor, under INA, or I should say USC 1101A42, is any person outside any country of such person's nationality, or in the case of a person having no nationality outside any country in which such person last habitually resided, and who is unable or unwilling to return to, or is unable or unwilling to avail himself or herself of protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership. Are you saying that he was a refugee in his own right, not just in a derivative status? Absolutely. He should get to argue that now? I mean, you know, he came in as a, for lack of a better term, a derivative refugee, right? Yes. But now you're saying he should have a chance to show he was a refugee in his own right? The law provides for that. Okay. All right. That's just helpful background. Thank you, Your Honor. Let's see. As my second point, the IJ doesn't have any jurisdiction to review USCIS decisions. A person who is placed in removal proceedings when the government believes that the foreign national has no right to remain in the U.S. at that point, at that point the foreign national is given an opportunity to apply for any and all forms of relief in order to afford deportation, which is the reason why the IJ, any relief available in immigration court would not have any bearing on Mr. Jama's refugee termination status. But, I mean, they could say that he's entitled to asylum, which, apart from the sort of waiting periods that you mentioned, I mean, isn't that exactly the same thing? It is not exactly the same thing. Asylum is, if I may, the asylum is a test of Mr. Jama's well-founded fear of persecution. At the time he makes that application for asylum, the burden of proof is on Mr. Jama. A refugee determination was already made by the Immigration Service, whether properly or not. The burden of proof is on the government to prove that Mr. Jama was not a refugee at the time of his admission in 2000. It seems like, to net it out, you're concerned about the loss of certain procedural rights rather than the substantive remedy of being able to stay here or eventually apply for adjustment of status. Is that fair? There's more to it than that, but that is the gist of it. Okay. All right. That's not to be dismissive of it, but I'm just trying to understand. Okay. All right. Thank you. Thanks. Good morning. I'm very pleased to court. Errors of any on behalf of the appellees. Your Honors, the appeal presents a jurisdictional issue that's of great import for immigration law. It's one that runs throughout many of these cases that you hear throughout the course, namely whether an individual in ongoing removal proceedings may institute parallel proceedings in federal district courts seeking to challenge the basis for those removal proceedings or issues that will arise and should be addressed within those removal proceedings by statute and by regulation. And as district court in this case and two separate circuit courts of appeals have found, these individuals must pursue their administrative leave before the immigration judge, then take their appeal to the Board of Immigration Appeals and come up on a petition for review before this circuit if they choose to do so in order to raise the claims this particular individual seeks to raise. And that's for two reasons. One, and I think it's instructive to take a look at what exactly has and has not occurred in front of the immigration judge in this court. There is no final decision that you can review because the very issue that the appellant in this case seeks for you to review, the merits of the termination of his derivative refugee status, has been adjudicated before the immigration judge. It will be appealed to the Board of Immigration Appeals and can be raised here. The IJ didn't review the refugee claim qua a refugee claim. The IJ reviewed whether he was a refugee just for purposes of determining whether he had valid entry documents. That's true. So, but, I mean, the point remains then that, you know, Mr. Halliday's point would remain that even if the IJ comes out the other way and says, actually, you did have valid entry documents, Mr. Jama can't get these procedural advantages that Mr. Halliday is arguing are lost, you know, forever. Is that correct? I don't know if that's completely accurate, but let me give you two answers to that. So, first, you're right that if we're looking at what was technically reviewed by the IJ in the rule proceeding. Yeah, I mean, he wasn't there reviewing the CIS. No, it's true. He found that the issue was irrelevant, but it's helpful to compare what would you review in this court? What would the district court review if you found jurisdiction to review it? You'd review was he, in fact, a derivative refugee? And that's precisely what the immigration judge reviewed in finding, well, he didn't have valid entry documents because he was not, in fact, a child. Rather, he was an adult married with five children at the time he was admitted to the United States. So, it's really the same precise review of the underlying merits. And that's an issue that can be appealed and that can be reviewed on a petition for review. But to the second point, I think this is what Judge Clay alluded to earlier. There's nothing that precludes him from raising that on a petition for review here. If the precise review he wants is my refugee status, or should I say derivative refugee status, should not have been terminated at the time in the way it was because certain procedures were not followed or because I wasn't allowed to present certain evidence, there's 8 U.S.C. 1252 A2D specifically provides the court of appeals and only the court of appeals. What's that state again? That's 8 U.S.C. 1252 A2D. And that is a jurisdiction saving provision that allows the court of appeals on a petition for review after a final order of removal to review any constitutional questions, any statutory interpretation questions, any legal questions arising from the entire removal proceeding. And how do we do it without a record? I mean, Mr. Halliday says there's no record leading to the CIS termination or refugee status. Well, that's not, I disagree that there's no record. I mean, we submitted and referred to no less than 22 exhibits in the district court. This is an APA case and it's similar. Let's say you're not in, well, I mean, in the district court, of course you can submit stuff. But he's saying if he doesn't file that district court suit, which is the position you're saying is correct, and he's limited to the record that's created in the CIS termination, the IJA proceeding, the board proceeding. He's saying there's nothing surrounding that CIS termination for us to look at and review. I don't think that's correct. There are two U.S.C.S. decisions. There is a denial of a motion for reconsideration. There is a denial of a waiver of admissibility. There is a separate asylum application. There are two separate applications for lawful permanent residence. All of those have accompanying documents. All of those have been submitted before the immigration judge or could be, should they choose to. They can create the record before the immigration judge, and then they can appeal that to the Board of Immigration Appeals and come before you. So it's not true that there's no, there wouldn't be a record. There would be the same record that would be before the district court if this were an APA case that there was jurisdiction for the district court to pursue. And on that point, it's important to distinguish between what Mr. Jama was admitted to the United States as and what he was. He was admitted as a derivative refugee. He did not apply for refugee status in his own right at the time. It's unclear why he or those applying on his behalf chose to do that, but that's what was done. So he was never admitted as a refugee. So he would have to renew this claim as of today, whether it's an asylum claim, whether it's a refugee claim. And that's the same standard of proof, essentially. So the argument that, well, in 1999, perhaps there were different country conditions, perhaps there were different arguments he could have made to apply for a refugee in his own right, they don't obtain because he never applied as a refugee in the first place. All he applied for and was admitted as is a derivative refugee. When USAS discovered that that wasn't the case, that he was, in fact, an adult with five children and married at the time, they terminated his status. Let me ask you a question about that. Can you point us to a regulation that says he wouldn't be able to switch the character of his refugee application from derivative, as it was, I guess, in 1999, to now refugee in his own right? Do you understand what I'm saying? I mean, he wants to argue, I guess, in the district court that, yeah, I mean, my aunt's not my mom, but I met myself the refugee definition in 1999. Now, is there a reg that says you can't change the basis on which you sought refugee status? You can't argue for a different ground for refugee status than the one you originally sought? I couldn't name a regulation. I'm not questioning your position that they can't change it, but I'm just wondering if there's a clear reg. I can't point you to a reg. What I can point out is that he did make this argument for USCIS twice, and they found that he was not eligible for refugee status in his own right. So I don't know that there's a specific regulation that says you can't, I say, grandfather yourself in from 1999 going forward, but I would say that even, let's assume there was a regulation, but it's not a one-way ratchet with asylum or refugee status. If country conditions change, the attorney general or his designees can terminate status because country conditions have changed and he may return. So without a reg, it just stands to reason that, no, he's not grandfathered in just because he applied at the time for a different status. And if I may, I just want to respond to a couple of points that Mr. Howdy made on behalf of Mr. Jones. So, yes, we do have in the record itself already the immigration judge specifically speaking to the point of, well, are you a refugee? And I've already addressed that. Let me move on to a separate point. So even assuming that there is final agency action here, I would argue that there's a second basis for channeling, for viewing that this should be something channeled into the Courts of Appeals, and that's 8 U.S.C. 1252 B.9. And it's instructive to look at the background of how Mr. Jama ended up in removal proceedings. So when USAS terminates his refugee status, by regulation they must institute removal proceedings. Once removal proceedings are instituted, the IJ has sole and exclusive jurisdiction to adjudicate any applications for relief that Mr. Jama or any similarly situated individuals may apply for. That includes asylum, which he's applied for and has been referred to the immigration judge. And to correct, I think, something there might be a disagreement about, he can and will and should apply for legal permanent residence status in immigration proceedings. It's true that right now he doesn't have status upon which to base that application because his refugee status has been terminated. But if he applies for asylum and is granted that asylum in removal proceedings, he can and will be granted legal permanent residence status. So it's a bit of a red herring to say, well, at this precise moment in time, I can't apply for legal permanent residence. He can when he has some other valid status on which to base that. And these are all issues that arise from the decision or action taken to institute removal proceedings, i.e. to terminate his refugee status. And by statute, rather than have piecemeal litigation where the district court addresses some aspect of the applications or the immigration status and the immigration judge addresses other aspects of it, it's all channeled into the immigration courts and taken up on appeal to you guys eventually on a petition for review. One other thing I'd like to, in their briefing, appellant refers to, and I think the amicus refers to, a case out of the Ninth Circuit, I might be mispronouncing this, the Madagonian 701F936, suggesting that he cannot raise the precise form of relief that he's seeking in immigration court and therefore this court or the district court has jurisdiction over the issue. I'd just like to point out that that case involved arriving aliens. The relevant regulations that apply here, 8 CFR 245.1 and 1245.1, both specifically carve out arriving aliens as an exception to the rule that they may apply for asylum in. So they don't have removal proceedings there in which they can make all their arguments because they're not in the country yet? That's right. They're a different species or class, if you will, of immigrants. They're considered unadmitted aliens or intended immigrants and they're subject to an entirely different set of statutes and they would be subject to expedited removal rather than a full-blown removal proceeding. To really sum up, it's just worth looking at what has happened and what will happen in this case. We have an individual who concedes that he was never eligible for the status he received in 1909. He's raised that claim before an immigration judge. He will be able to appeal that claim at the Board of Immigration Appeals and he'll be able to come before you guys on a petition for review where any constitutional and statutory claim can be reviewed, including the technical claim that he should not have had his refugee status terminated in the way it was terminated. I would submit that review of that specific procedural issue isn't really the crux of the issue. An appellant wants review of whether he should in fact be considered a refugee or a derivative refugee. He never raised the refugee claim, so that's a claim he has to raise, but now as in the form of an asylum application before the immigration judge, he can raise the claim, although it would seem fruitless that he should be entitled to derivative refugee status, but that's all that would be reviewed if the court had jurisdiction to review it. What do you mean he never raised the claim? What claim are you talking about? He's arguing that, if I'm understanding correctly, that USCIS should have allowed him to raise the claim that he was a refugee in his own right in 1999, that they erred because they only considered whether he was a derivative refugee. I thought you said he did raise that and it was rejected. He raised it during the adjudications before USCIS. He argued he was a refugee in his own right. It's unclear to me if that was... You just said he didn't raise it. I don't mean to belabor... No, no, no. I'm sorry if I've misspoken. What I'm suggesting is he did not apply for refugee status in his own right in 1999. He applied only and received derivative refugee status. He then raised the issue of whether he should be deemed a refugee in his own right during his adjudications before USCIS, and before the immigration judge's part of his pending asylum claim, he'll be able to raise the similar species of claim, that he has a well-founded fear of persecution and he's entitled to asylum. And again, all that will be channeled into the courts of appeal on a petition for review. So it's really not an issue of jurisdiction stripping. It's really just an issue of claim channeling, and Congress is seeing fit to channel this species of claim to a later date in one specific petition for review before the court of appeals. There are no further questions. Apparently not. Thank you. Your Honors, I would like to highlight a couple of issues here that were raised by the government. First of all, whether Mr. Jama is a sinner or a saint, with respect to representations he may or may not have made, that doesn't mean that he does not necessarily have his day in court. He's having his day in front of the agency, that's for sure. And he can come here, right? I mean, he will come here, I'm sure, if he doesn't get removal relief, right? That would be on the separate claim. That would mean that his efforts in the immigration court to avoid removal, he lost and he would need to go to BIA and then subsequently here. However, the point is this. There is an agency procedure. There's an agency case called the Matter of Garcia, and I'm going to butcher this, Al-Zugaray. It's an INN decision 407 from 1986. It states that the sole basis for terminating the refugee status of an alien, such as Mr. Jama, who was admitted to the United States as a refugee under Section 207 of the Act, is a determination that he was not a refugee within the meaning of Section 101A42 of the Act, which is 1101A42 of USC. Now, what that means, since in this case Mr. Jama was never given that opportunity, he never had an opportunity to explain that he was a refugee in his own right, despite the fact that the agency wrote a decision terminating his refugee status saying that he never brought that up, sua sponte, he was not required to. It was the agency that was required to make that determination. That never happened. And because that never happened, we have no opportunity to make a record on that point. I'm not following you. You said the agency was supposed to bring that up. He didn't apply for it, so why would the agency bring that up? There's no application for refugee status within the United States, except for a review as to whether an applicant is a, or Mr. Jama is a refugee in his own right in a termination proceeding. He never had the benefit of a termination proceeding. Well, he never pursued refugee status in his own right. Why would you blame the agency for not addressing that if it was not before them? The facts are that Mr. Jama was admitted as a refugee, rightly or wrongly, and there was a procedure to go through to terminate that status. Well, only a derivative refugee, though. I'm not following you at all on this. The statute that confers refugee status indicates that spouses of minor children are admitted as refugees, as the principal refugee would be. And it also says that that's the case if they are not eligible for refugee status in their own right. Mr. Jama fled the same persecution in Somalia that his aunt did. Mr. Jama fled the same violence and the same strife that the rest of his family did. There is a difference. I mean, you know there's a difference, right? I mean, he wasn't determined to be a refugee in his own right. He was a derivative refugee. Mr. Jama was seeking to flee. No, he was from the same country, but that is an administrative fact, right? I don't follow you. He was granted refugee status as, you know, in a derivative, on a derivative basis. Yes. Not in his own right. Not because there was a determination that he, your client, faced certain conditions. It was because his aunt faced certain conditions. That's correct. Now you want to, now you're trying to argue or you're saying you should argue to the agency that he should be able to show he faced those conditions. And I guess we're kind of wondering, it's 15 years later. I mean, it's a little late for that, isn't it? Why does the agency have to adjudicate the situation in 1999? Because there's a clear legal procedure that to terminate the refugee status that he was granted and the agency attempted to terminate his refugee status, we argue, unlawfully. He never had the benefit of that procedure. Had he had the benefit of that procedure, he could have raised his points then that he was a refugee at the time he was admitted, just like the statute requires. Thank you. Thank you very much. The case is submitted. And you will hear from us in due time.